Hobert J. GREEN, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 15918.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 20, 1989.

Dennis J.C. Owens, Kansas City, for movant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

The movant, Hobert J. Green, was charged with murder in the first degree in that he, after deliberation, knowingly caused the death of James Allen Detjen by beating him. Pursuant to a plea bargain, movant entered an **Alford** plea of guilty to a reduced charge of murder in the second degree. In accordance with that plea bargain, he was sentenced to imprisonment for life. By his motion under Rule 27.26[1], he seeks to set aside that plea of guilty and sentence. Following an evidentiary hearing, the motion was denied. Movant states one point on appeal.

The record presents only brief references concerning the facts of the homicide and the evidence available to the state to convict the movant. The principal source of such information is the uncontradicted statement of facts by the prosecuting attorney at the guilty plea hearing. Other bits of information may be gleaned, often by reasonable inference, from other portions of the record. A brief synopsis of the circumstances of the homicide and that evidence will aid in consideration of the appeal.

For an undisclosed period of time, movant, age 60 at the time of his guilty plea, had lived with Katherine Detjen on a farm in rural Lawrence County. Katherine Detjen was 28 years old at the time of that plea. She was said to be an alcoholic and had been in difficulty with the law for bad checks. James Allen Detjen was Katherine Detjen's son. The putative father was said to be movant. On May 25, 1985, the date of the infant's death, James Allen Detjen was thirteen months old. Movant and Katherine Detjen buried him in the garden on the farm. When the body was later recovered on November 9, 1985, a postmortem examination was performed on November 11, 1985. His death certificate states that he died from undetermined internal injuries due to blows to the abdominal area.

Thereafter, at an undetermined time, movant and Detjen returned to Oklahoma. In November, 1985, movant reported to the police in Bartlesville, Oklahoma that James Allen Detjen was in good health, but had been kidnapped from movant's vehicle. Subsequently, a warrant was issued for movant's arrest by the Associate Division of the Circuit Court of Lawrence County. He waived extradition. In Oklahoma, he made at least two separate statements concerning the death of James Allen Detjen to two law enforcement officers. In Missouri, he also made a statement to law enforcement officers. The record shows that in those statements he retracted the kidnapping story and said that he had killed the baby accidentally. The contents of the statements are not otherwise developed except they were said to be inconsistent.

At the guilty plea proceeding, the prosecuting attorney stated to the court facts that he anticipated the state would develop if there was a trial. That statement included the following.

[MR. SIFFERMAN]: "[T]he state's evidence would be that the Defendant repeatedly struck James Allen Detjen in the stomach with his hands and fists and kicked him, uh, in the back on several occasions, and this occurred over, uh, several-hour period, and that, uh, the State's evidence would be that Defendant struck James Allen Detjen 40 to 50 times, uh, that James Allen Detjen died from these blows, and that the Defendant buried James Allen Detjen in a, in his garden behind his house."

Following the statement by the prosecuting attorney, the following question was asked by the court and answer given by movant.

"Q. (By the Court) Mr. Green, do you have any question in your mind about whether or not the State would be able to prove what they've just said?

A. No."

1. Movant's sentence was pronounced before and his motion under Rule 27.26 was pending on January 1, 1988. Post-conviction relief is governed by the provisions of former Rule 27.26.

At the plea hearing, movant acknowledged that Katherine Detjen, who testified at the preliminary hearing, would testify that "I was very guilty"—"that I beat the baby to death". He had earlier told the court the baby died after he "went over to pick the baby up, and I fell and struck the baby with my right hand as I went down." He said he did not "murder intentionally" but was pleading guilty because it was "very possible" a jury would find him guilty of murder in the first degree.

The movant's sole point is "[t]he trial court erred in failing to vacate Mr. Green's conviction on the basis of inadequate representations made by his defense lawyers in that the actions of those attorneys made Mr. Green's plea of guilty involuntary." This point presents nothing for appellate review. Movant's appeal is properly denied on that basis. Rule 84.04(d); *Forshee v. State,* 763 S.W.2d 352 (Mo.App.1988).

Moreover, consideration of the record and movant's argument does not aid him. The thrust of the movant's argument is that he received ineffective assistance of counsel because the actions and inaction of his counsel constituted undue pressure to enter a plea of guilty to a charge of murder in the second degree. Movant testified that until counsel recommended a plea of guilty, counsel had repeatedly told him the state's case was weak and that the movant had nothing to worry about. He further testified that counsel did not tell him of the evidence against him. He felt that counsel had done nothing toward preparing his defense. When counsel recommended a guilty plea, movant was told that he had no chance of not being convicted of first degree murder. He was told there was a real possibility that he would be paroled in two or three years. He was assured that medical assistance for arthritis was available in the penitentiary and that his family could visit all day and have picnics on the grounds. Movant said that he felt he had no choice but to enter the plea of guilty.

It is apparently upon the basis of such evidence that the movant, without specification, asserts that his counsel was unprepared for trial. It is also apparently upon the basis of such evidence that in his brief he makes the following assertion.

"It is clear that Mr. Green's trial lawyers never intended to defend him. They spoke optimistically of his chances only to motivate his family to pay many thousands of dollars in fees. Those fees would be justifiable only if a protracted trial was undertaken. Once they squeezed Mr. Green's family for all they could, they did everything they could to avoid doing that trial work."

This is an unsupported characterization of the representation afforded movant by his trial counsel. Movant was represented by two able and experienced lawyers. The testimony of movant's lead counsel included the following. They were fully prepared to try the case. At no time did counsel ever advise movant that he had nothing to worry about. He did give the following advice to movant.

"A. [MR. CLAPPER:] My advice to him was that I felt the State had a strong case against him. In the event they were to proceed to trial on capital murder charge, that the chances of conviction were fairly strong and that the possibility of him receiving a death sentence was fairly strong."

Counsel added the following in respect to his evaluation of movant's case.

"A. I never gave him an evaluation based on mathematical terms. I do think that after we had had a chance to review the transcript of the preliminary, after we had had him evaluated with regard to his mental condition, after we had seen all of the other evidence the State had and after we investigated the possible defenses Mr. Green had, after we had submitted Mr. Green to a polygraph test and after the State's primary witness, Miss Detjen had submitted to a polygraph test, that we did discuss possibilities at that time and that would have been about the time the Prosecutor indicated a willingness

to file a reduced charge in return for a plea of guilty."

It was the duty of counsel to advise his client of the strength of the state's case. *Taylor v. State,* 539 S.W.2d 589 (Mo. App.1976). The fact such advice was that the state's case was strong, or that his conviction was likely, does not vitiate the plea of guilty. *Conn v. State,* 769 S.W.2d 822 (Mo.App.1989). It is apparent from the record that the advice given by movant's counsel was effective, not ineffective assistance of counsel.

Counsel denied advising movant that he would be eligible for parole in two or three years or that the family could have a picnic on the grounds. It is trite to observe that the motion court had the right to reject such testimony of the movant, his daughter, and one of his ex-wives. *Shannon v. State,* 683 S.W.2d 649 (Mo.App.1984).

The record demonstrates that in addition to numerous conferences with movant, his counsels' representation included the following: [t]he preparation and filing of nine motions or applications, including a motion for discovery, a motion for deposition, a motion to suppress evidence and a motion for a mental examination. They appeared and participated in four hearings upon those motions and, in addition, the preliminary hearing. They interviewed the accessible witnesses in Missouri and in Oklahoma. They reviewed the tape-recorded statements of movant. Movant's only suggestion concerning anything that counsel could have done but did not do was to interview two possible character witnesses in Oklahoma.

Movant's assertion that his counsel was unprepared is contradicted by the record. It is contradicted by movant's testimony at the plea hearing. The motion court was entitled to and did reject this belated and ill-founded assertion by movant.

The motion court, after detailed findings concerning movant's assertions, expressly found that movant's counsel did not render ineffective assistance. That finding is supported by the evidence and the judgment is affirmed.

FLANIGAN, P.J., and HOGAN, J., concur.